# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JIMMY LEE FOUST,**

      **Plaintiff,**          **CIVIL ACTION NO. 09-cv-14462**

vs.

                                  **DISTRICT JUDGE BERNARD A. FRIEDMAN**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:**     This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 7) be GRANTED in part, Defendant's Motion For Summary Judgment (docket no. 9) be DENIED and the instant case REMANDED pursuant to step four of 42 U.S.C. § 405(g)[1].

\*\*\*

**II.**     **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of December 4, 2006 alleging that he had been disabled since January 17, 2004 due to major depression. (TR 95, 106, 110). The Social Security Administration denied benefits. (TR 53-56). Administrative Law Judge Dean C. Metry (ALJ) held a de novo video hearing on December 15, 2008 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability within the meaning of the Social

---

[1] Plaintiff asks only that the case be remanded for an award of benefits pursuant to 42 U.S.C. § 405(g). In this instance, however, a reversal and remand for further proceedings, not simply an award of benefits, is appropriate where not all essential factual issues have been resolved. *See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Security Act at any time from January 17, 2004 through the date of the ALJ's February 23, 2009 decision. (TR 51). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-3). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's Testimony

Plaintiff was fifty-three years old at the time of the hearing. (TR 15). Plaintiff completed the eleventh grade and was employed as a welder at an automotive manufacturing company. (TR 15). After being promoted to a supervisor, the stress became too much for him. (TR 14). Plaintiff's last day of regular full-time work was January 15, 2004. (TR 19). At the time of the hearing Plaintiff was on log-term medical disability leave. (TR 18). Plaintiff testified that he attempted to return to work which lasted for four and a half days before he was sent home because his co-workers said he was "out of control." (TR 19).

Plaintiff testified that he cannot work because he shakes and gets irritable when he is around other people and due to the shaking he has trouble writing. (TR 26-27). Plaintiff testified that he would not be able to return to his work as a welder due to his shaking. (TR 31). He testified that he took Xanax the morning of the hearing. (TR 26). Plaintiff testified that he also takes Wellbutrin and Paxil. (TR 26).

Plaintiff lives with his wife and two dogs. (TR 16). Plaintiff testified that he does not like to be around people at all, including his family, because he gets upset and nervous. (TR 20). Plaintiff testified that he loves his children and grandchildren, but when the grandchildren come to

visit, after an hour and a half Plaintiff goes into his bedroom. He testified that he believes he spends about 330 days a year in his bedroom. (TR 21). Plaintiff testified that he stays "at home alone all the time." (TR 21). He has no hobbies and does not grocery shop, bowl or go to the bars. Plaintiff testified that he does not drive often. (TR 17). He testified that he has a boat, two wave-runners, two motorcycles and a Corvette and both the mileage on the Corvette and hours on the boat are low because he does not use them. (TR 22). Plaintiff watches television, although he is "bored" with it, and paces and worries. (TR 21, 25, 27).

He testified that his sleep is disrupted and he has not "slept eight hours in Lord only knows." (TR 24). Plaintiff is able to take care of his personal hygiene needs, including bathing and dressing himself. (TR 24). He testified that he usually does not have an appetite and he eats about once per day. (TR 25). Plaintiff testified that he forgets things, for example, the name of a man he worked with for years. (TR 28). He attends therapy regularly, which was reduced from once a month to every two months dues to insurance and financial issues. (TR 19). Plaintiff testified that he is on the verge of losing everything because he is not able to work. (TR 23).

### B. Medical Evidence

In February 2004, Danilo A. Dona, M.D., diagnosed Plaintiff with working diagnoses of severe major depression without psychotic features (296.23) and panic disorder with agoraphobia and moderate panic attacks (300.21), prescribed Paxil CR and referred Plaintiff for counseling. (TR 157-58). The diagnoses followed Plaintiff's complaints of increasing depression, including feeling sad and tired, difficulty sleeping, episodes of spontaneous crying, financial difficulties, illusions and marital problems. (TR 157, 159-61). The doctor reported that Plaintiff was alert and oriented times four, yet his general appearance was anxious, depressed and restless. (TR 157). In January 2004,

the doctor had noted Plaintiff's report that he had a "hard time adjusting at work since they cut out personnel and he was forced to work multiple job (sic) in spite of being a supervisor." (TR 159).

On March 18, 2004 Plaintiff underwent a Psychiatric Assessment with Nihal Saran, M.D. (TR 168-70). Dr. Saran diagnosed major depression, single episode, severe type and generalized anxiety disorder, noted that stressors were "high due to job stress" and assigned a GAF of 45 to 50. (TR 168). Dr. Saran reported that Plaintiff's memory was intact for recent and past events but insight and judgment were poor at that time. (TR 168). The doctor reported that Plaintiff was "quite tremulous when he was talking about his job, what was going on, his hands were quite shaky" and he appeared anxious and nervous. (TR 169). The doctor noted Plaintiff's wife's report that Plaintiff wanted to be left alone, does not want to see his children or grandchildren and gets angry easily. (TR 169). The doctor recommended continuation of psychotherapy and to continue Paxil, increasing the dosage, and adding Xanax to control anxiety. (TR 168). Dr. Saran noted that the goal of treatment was to alleviate Plaintiff's depression and "control his anxiety where the patient is not so shaky, able to function on a day to day basis and is able to get back to work." (TR 168). Dr. Saran concluded that Plaintiff "at this time is not ready to return to work and may need some time to be stabilized on medications." (TR 168). His prognosis was "fair with treatment." (TR 168).

Plaintiff attended psychotherapy and/or treated with Dr. Saran monthly from September through November 2004 and in January 2005, three times in February 2005 and monthly from March through June 2005 and September 2005 though August 2006, twice in October 2006 and once in November 2006. (TR 167, 171-88). In November 2006 the therapist noted Plaintiff's report that he would like to return to his work on the line because he could not tolerate the stress of being a supervisor. (TR 167). Plaintiff's medications were monitored and prescribed monthly from March 2004 through November 2004 and throughout the remaining period. (TR 166). Plaintiff continued

4

treating with Dr. Saran twice in January 2007 and monthly throughout the remainder of 2007 and seven times in 2008. (TR 228-38). Dr. Saran completed a Psychiatric/Psychological Impairment Questionnaire dated November 6, 2008 and set forth in further detail in the analysis below. (TR 220-27).

On March 24, 2007, Plaintiff underwent a consultative examination with H. Gummadi, M.D. (TR 189-91). Dr. Gummadi observed that Plaintiff had some trouble remembering things. (TR 190). The doctor reported that Plaintiff was in contact with reality, self-esteem was low, some psychomotor retardation was present, and he "seemed to have limited motivation to get better," there did "not seem to be a tendency to exaggerate symptoms," and he had "insight into his current problems." (TR 190). Plaintiff was oriented time three, was able to repeat four digits forward and three backward and was able to recall three of three both immediately and after three minutes. (TR 190). Dr. Gummadi diagnosed major depressive disorder, single episode, assigned a GAF of 50 and concluded that Plaintiff's prognosis was "guarded" and Plaintiff was able to manage his own funds. (TR 191).

A non-examining medical consultant completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique on April 10, 2007 and concluded that Plaintiff has mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, no difficulties maintaining concentration, persistence or pace and has had no episodes of decompensation. (TR 193-211). The consultant concluded that Plaintiff "retains the mental capacity to sustain an independent routine of work activity," is "able to tolerate low stress social demands and adapt to simple changes in routine" and "may be more limited at meeting more complex and detailed work demands." (TR 196).

    **C.**     **Vocational Expert**

The Vocational Expert (VE) classified Plaintiff's past work as a supervisor as skilled at the SVP level 8 and medium exertion as classified in the Dictionary of Occupational Titles (DOT) and heavy as Plaintiff performed it. (TR 29). The essential tasks of the position included computer work, scheduling and report writing. (TR 31). The ALJ asked the VE to consider an individual of Plaintiff's vocational, educational and chronological background who could perform light work in a job that allows only occasional contact with the general public, no working in team or tandem, involves only routine, repetitive tasks, and only frequent fingering with both hands. (TR 32). The VE testified that such an individual could perform unskilled work at the light exertional level within those limitations and the positions include visual inspector checker (approximately 1,000 jobs in southeastern Michigan (locally), more than 80,000 in the national economy), small products assembler (approximately 2,500 locally and more than 100,000 nationally) and hand packager (approximately 2,500 locally and more than 100,000 nationally).

The VE testified that if an individual had the ailments as described by Plaintiff's testimony, there could be no work that such an individual could maintain in the competitive marketplace. (TR 32). The VE testified that absenteeism and the need for isolation would preclude competitive employment. (TR 33). The VE confirmed that his testimony was consistent with the DOT. (TR 33).

Upon questioning by Plaintiff's attorney the VE testified that the limitations included in Dr. Saran's November 2008 opinion would preclude gainful employment. (TR 33-34). The VE testified that of the marked limitations which Dr. Saran noted in several, any of the limitations would preclude gainful employment. (TR 34).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through June 30, 2010, had not engaged in substantial gainful activity since January 17, 2004 and suffers from depression and anxiety, severe impairments, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 45). The ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels limited to frequent fingering, occasional public contact, no working in team or in tandem and consisting of routine repetitive tasks. (TR 47). The ALJ found that Plaintiff is not able to perform his past relevant work, but he is able to perform a significant number of jobs in the economy and therefore he is not suffering from a disability under the Social Security Act. (TR 49-50).

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    he was not presently engaged in substantial gainful employment; and

(2)    he suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only

8

'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ erred in failing to give controlling weight to a treating physician's opinion, including a GAF score which was consistent with that assigned by a consultative examiner and that the ALJ's credibility determination is not supported by substantial evidence.

**C.     Analysis**

**1.     Whether the ALJ's Evaluation of Dr. Saran's Opinion Is Supported By Substantial Evidence**

Plaintiff argues that the ALJ erred in failing to give controlling weight to Dr. Saran's November 6, 2008 opinion, which, he argues, was consistent with consultative examiner Dr. Gummadi's opinion. (TR 220-27, 171-88). Plaintiff points out that Dr. Saran assigned a Global Assessment Function (GAF) of 50 on November 6, 2008 and Dr. Gummadi assigned a GAF of 50 on March 24, 2007. (TR 190, 220). Dr. Saran assigned a GAF of 45-50 on March 18, 2004. (TR 189-91).

A GAF of 50-60 "indicates moderate symptoms or moderate difficulty in social, occupational or school functioning." *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 463 (6th Cir. 2006) (Claimant had GAF scores in the range of 21 to 60, with the majority of scores falling within the 50s and claimant was not precluded from a wide range of work or his prior work.); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 503 n.7 (6th Cir. 2006) ("A GAF score may help an ALJ assess mental RFC, but it is not raw medical data."); and *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (citations omitted) (noting that "the Commissioner 'has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that

[GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"). The ALJ cited Dr. Saran's GAF score and did not err in declining to find disability on the basis of the GAF scores alone. (TR 48).

The ALJ followed the technique set forth in 20 C.F.R. section 404.1520a to evaluate mental impairments and incorporated those findings into his written decision. *See* 20 C.F.R. § 404.1520a(e)(2). (TR 13). The ALJ found that Plaintiff has mild limitations in function area of activities of daily living and moderate limitations in the areas of social functioning and concentration, persistence and pace. (TR 46). The ALJ found that there is no evidence of episodes of decompensation. (TR 46).

Plaintiff argues that Dr. Saran's opinion precludes work and that the ALJ assigned "great weight" to a non-examining evaluator whose opinion was contrary to that of Dr. Saran. (Docket no. 7). It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e)(1). The ALJ is required, however, to give the reasons for the weight he assigned to the treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2).

Plaintiff argues that Dr. Saran's findings in the November 6, 2008 Psychiatric/Psychological Impairment Questionnaire are incompatible with the ability to maintain gainful employment. (TR 220-27). Plaintiff argues that the VE testified that an individual with the profile set forth in Dr. Saran's November 2008 opinion could not be gainfully employed and that "any" of the marked limitations set forth in the several areas on the form would preclude gainful employment. (TR 34).

Dr. Saran opined on the November 2008 questionnaire that Plaintiff is markedly limited (defined as "effectively precludes the individual from performing the activity in a meaningful manner") in the following activities: (1) "[A]bility to remember locations and work-like procedures" (consistent with Dr. Gummadi's opinion that Plaintiff "has some trouble remembering things"); (2) "ability to carry out detailed instructions"; (3) "ability to maintain attention and concentration for extended periods" (consistent with Plaintiff's wife's report that he has trouble with attention and concentration); (4) "ability to sustain ordinary routine without supervision"; (5) "ability to work in coordination with or proximity to others without being distracted by them"; (6) "ability to make simple work related decisions"; (7) "ability to complete a normal workweek . . ."; (8) "ability to interact appropriately with the general public" and (9) "ability to accept instructions and respond appropriately to criticism from supervisors" and has marked limitations in all mental activities listed in the area of adaptation. (TR 132, 190, 222-24).

In discussing Dr. Saran's opinion, the ALJ noted Dr. Saran's 2004 conclusion that Plaintiff could not return to work and the "similar conclusions" in 2008. (TR 49). The ALJ cited some of Dr. Saran's limitations including that Plaintiff was markedly limited in the ability to interact appropriately with the general public, the "ability to work in coordination with or proximity to others without being distracted by them, and the ability to "accept instructions and respond appropriately to criticism from supervisors."

11

The ALJ stated that he "was not persuaded by Dr. Saran's conclusions because evidence regarding the claimant's ability to perform his daily activities establishes he is not so limited." (TR 49). The ALJ has failed to specifically identify how Dr. Saran's opinion is inconsistent with any other evidence of record or inconsistent with the limited engagement in daily activities which was reported and to which Plaintiff testified. Even Defendant, in its Statement of Facts notes that Plaintiff "described extremely limited household and recreational activities." (Docket no. 9).

The activities which the ALJ noted that Plaintiff performs, including driving, performing household repairs and chores, mowing the lawn, paying bills, counting change, using a check book or money order and handling a savings account, are not inconsistent with Dr. Saran's opinion. (TR 49, 129-30). The ALJ correctly pointed out that Plaintiff "is able to go out alone and can interact with authority without problems," but failed to note that Plaintiff qualified these activities, testifying that he "does not drive that often," and Plaintiff's wife reported that Plaintiff does not like to go out to get supplies to do household chores and repairs and only goes out about once a month for doctor's appointments or to mow the lawn. (TR 17, 49, 129-30). Dr. Gummadi also noted Plaintiff's report that he "is able to do some chores that do not involve any social activity." (TR 189). Plaintiff's wife reported that he shops about once every three months for approximately one hour. (TR 130). His wife reported that although he does not have any problems with family, friends and neighbors, he does not want them to come over and he does not want to visit them. (TR 132). She also reported that Plaintiff does not have trouble with authority figures. (TR 133). She reported that Plaintiff gets "upset" with people "easy." (TR 134). Substantial evidence also shows that Plaintiff shakes and becomes anxious or nervous when he is out, and no evidence contradicts this.

The ALJ found that Plaintiff has only moderate difficulties in social functioning. The ALJ also stated that he acknowledged "the claimant's testimony with regards to his limitations in social

12

functioning. However, the residual functional capacity limits him to occasional public contract and no working in team or in tandem. There is nothing in the record establishing his inability to perform such functions." (TR 49). Dr. Saran's opinion contradicts this finding. Dr. Saran's more restrictive opinion is supported by years of almost-monthly treatment records and medication monitoring and adjustments. (TR 177-89).

The ALJ found that the record does not show that Plaintiff has a complete inability to be around people because he "remains married and he lives with his wife" and "[w]ith the exception of some gaps in his treatment, the claimant has been able to see his therapist at least once a month, which is inconsistent with an individual with severe social limitations." (TR 49). Plaintiff's testimony on these two points, however, is not inconsistent with Dr. Saran's opinion and marked social limitations. Plaintiff testified that he does not like to go to the doctor because he does not like to sit in the waiting room with other people and he gets "very nervous." Plaintiff also testified that he loves his children and grandchildren but he does not see them often because he does not like to be around people at all and he gets upset and nervous. Despite being married, Plaintiff testified that he probably spends 330 days a year in his bedroom and he is home alone all day while his wife works. (TR 20-21). The ALJ has not given reasons, including identifying contradictory evidence, for discounting the treating physician Dr. Saran's opinion. To the extent that the ALJ assigned "great weight" to the opinion of a non-examining state agency psychological consultant, "in determining the question of substantiality of evidence," a non-examining physician testifying on the basis of his review of the record "is entitled to less weight than the reports of any other physicians who examined [claimant] over a period of time." *Sherrill v. Sec'ty of Health and Humans Servs.*, 757 F.2d 803, 805 (6th Cir. 1985).

**2.     Whether the ALJ's Credibility Determination Is Supported By Substantial Evidence**

Plaintiff also argues that the ALJ's finding that Plaintiff's testimony is not credible is "based on inaccurate and contradictory inferences the ALJ makes with the record." (Docket no. 7 p. 9). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ states that "the record shows that the claimant has been able to manage his symptoms to the point he is able to perform unskilled work." (TR 48). The ALJ does not, however, identity the records that support this assertion. As the Court noted above with respect to Dr. Saran's opinion, the ALJ overstated the extent of Plaintiff's activities of daily living including the extent to which the activities involve socialization. The activities as described by Plaintiff are not substantial evidence supporting the ALJ's credibility determination with respect to the extent of Plaintiff's

limitations. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007) (The ALJ erred in finding that claimant was "fairly active" by noting minimal daily functions that were not comparable to work activities, mischaracterizing claimant's testimony regarding the scope of her daily activities, and failing "to examine the physical effects coextensive with their performance.").

The ALJ also found that the "gaps in the claimant's treatment history and the claimant's conservative treatment are inconsistent with his allegations of disabling condition." (TR 48). The gaps on which the ALJ relies followed Dr. Saran's initial March 2004 evaluation until September 2004 and again followed an October 27, 2004 appointment until January 4, 2005. (TR 48). Plaintiff correctly argues that the record shows that his medication continued to be refilled on a monthly basis throughout these periods, with the exception of December 2004. (TR 166). Following these two gaps in 2004, Plaintiff's treatment with Dr. Saran continued from 2005 through 2008. (TR 167, 171-88, 228-38). Plaintiff notes that the ALJ relied on Plaintiff's treatment history both to show that seeing the [therapist] regularly was inconsistent with Plaintiff's claims of severe social limitations and that any gaps in the same treatment were inconsistent with claims of a disabling condition. The ALJ's findings with respect to Dr. Saran's opinion and Plaintiff's credibility are not supported by substantial evidence when considering the record in its entirety.

## VI.     CONCLUSION

The ALJ's opinion is not supported by substantial evidence and the Court should remand this matter pursuant to step four of 42 U.S.C. § 405(g) for further proceedings as set forth herein. Defendant's Motion for Summary Judgment (docket no. 9) should be DENIED, that of Plaintiff (docket no. 7) GRANTED IN PART and the instant case REMANDED pursuant to step four of 42 U.S.C. § 405(g). Specifically, the case must be remanded back to the ALJ so that he may: (1) Re-assess Dr. Saran's opinions in light of the findings made herein, explaining the weight given to his

opinion and giving good reasons for any discounting of the opinions; (2) re-evaluate Plaintiff's credibility and, if necessary, Plaintiff's RFC; and (3) if warranted, conduct a new step-four and a new step-five analysis.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 3, 2010         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

       I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 3, 2010        s/ Lisa C. Bartlett
                                              Case Manager